<div style="text-align: right; font-style: italic">EASTERN DIST.<br>February, 1837.</div>

RELF,<br>SYNDIC, &c.<br>*vs.*<br>IVES.

---

RELF, SYDIC, &C. *vs.* IVES.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, THE JUDGE OF THE SECOND PRESIDING.

Where the principal instructs his agent and attorney at law, intrusted with the enforcement of an execution against certain property, to let the sale take place without any interference on his (principal's) part, and the attorney bids it in on his own account, for a sum less than the debt, he is not liable for any loss sustained by the principal, or for a violation of his trust.

This is an action instituted by Richard Relf, sole syndic of Kenner & Co., against Thomas E. Ives, counsellor and attorney at law, to render him liable, and have a sale to him rescinded, of certain property mortgaged to Kenner & Co.,

EASTERN DIST. which he bid in on his private account, whilst, as is alleged,
February, 1837. he was acting as the plaintiff's agent and attorney at law.

RELF,
SYNDIC, &c.
*vs.*
IVES.

The defendant pleaded a general denial, and averred that his authority to bid for the plaintiffs, had been revoked by letter, and that he was at liberty to act for himself. He sets out specially the circumstances and facts under which the transaction took place.

The pleadings and evidence of the case are stated in detail, in the opinion of judge Bullard.

The defendant had judgment, from which the plaintiff appealed.

*Ives, in propriâ personâ,* argued the case *ex parte* for the appellee.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff, as sole syndic of the creditors of Kenner & Co., represents in his petition, that the defendant was employed as attorney and counsellor at law, to sue for, and recover a debt due to that estate, which was secured by mortgage on a tract of land in the parish of Iberville, which had passed into the hands of third persons; that he obtained a final judgment, but was restricted in the execution of it to the seizure and sale of the mortgaged premises, the original debtors having become insolvent, and that the land was seized and offered for sale, but not bringing two thirds of its appraised value, which was twelve thousand dollars, was advertised a second time for sale at twelve months credit, when it was purchased by the defendant for two thousand dollars, who gave a twelve months' bond. The plaintiff alleges that the defendant, after the rendition of the judgment, continued to act as the counsel of the syndics, and by letter asked from them an authority to purchase the land on their account, and that in reply, the plaintiff, as one of the syndics, did authorize him to bid for them to the amount of seven thousand five hundred dollars. He alleges that the defendant did take upon himself that agency, and stated to several persons, before the day fixed for the sale, that the

EASTERN DIST.
*February*, 1837.

RELF,
SYNDIC, &c.
*vs.*
IVES.

land would not be sold for less than seven thousand five hundred dollars, and that accordingly, he bid that amount for them; but it not being two thirds of the appraisement no sale took place. He further alleges, that when the land was advertised for sale on a credit of twelve months, the defendant wrote to him to be informed, what amount he would authorize to be bid, stating at the same time, that he *believed* the property would sell for a sufficient amount to pay the judgment and costs, and that Mr. Ives was informed in reply, that the syndics would not make any bid for the property, which course they the more readily adopted, as it was the defendants opinion that the property would sell for enough to pay the judgment. He further avers, that the defendant failed to inform the persons to whom he had communicated his former authority, to bid for the land, that it had been withdrawn; but well knowing that the syndics confided in him, as their attorney and agent, to attend the sale, in violation of the trust and confidence reposed in him, he himself became the purchaser, when no other bidders were present, although it was in his power to have the sale postponed, which took place on the land itself, instead of being in the town of Plaquemine, where the first exposure had taken place. The petition concludes with a prayer, that the sale of the land may be rescinded, and that it be sold at twelve months' credit, for the benefit of the creditors of Kenner & Co., or that the defendant be adjudged to pay in damages, the sum of nine thousand dollars, the value of the land.

The defendant, in his answer, admits that he purchased the tract of land on his own account; and he denies that he was, at the time of the sale, either the attorney at law or the agent of the syndics of Kenner & Co., or that he had any authority or power to bid for them, or to bind or obligate them by any bid which he might have made on their account; that on the contrary, he was instructed to let the sale proceed, without any interference on the part of the syndics. He further avers, that after he had received those instructions, he wrote to the syndics, informing them that

EASTERN DIST.
February, 1837.

RELF,
SYNDIC, &c.
vs.
IVES.

he feared the property would be sacrificed, unless they authorized him to bid for them, and urging them to give him authority, and that real property was much depreciated in value, but that he received no authorization.

The trial in the court below, resulted in a judgment in favor of the defendant, from which the plaintiff has appealed. But neither he, nor his numerous counsel, who figure in the record, have thought proper to favor this court with any arguments, either oral or written, or any reference to legal authorities, upon which they rely for a reversal of the judgment.

The evidence in the record shows, that the defendant, as the attorney at law of the syndics, obtained a final judgment against Adams, and that the land in question was seized to satisfy that judgment. It was first exposed for sale on the 8th of December, 1834. On that occasion the defendant, under the express authority of the syndics, bid seven thousand five hundred dollars, but the appraisement amounting to twelve thousand dollars, no sale took place; and it was advertised again for sale on the 26th of the same month, at twelve months' credit. On the day previous to the first exposure, Mr. Ives wrote to the plaintiff, that there would be no sale, as no one would push the property to his limit of seven thousand five hundred dollars, and that of course the property would be re-advertised for sale in about fifteen days. "In the meantime," he adds, "Mr. Saul will doubtless arrive, and join you in a letter to me of instructions as to the sale under twelve months' bond. Of course, no bond will be required, if you, as plaintiffs and syndics, become the purchasers. *I do not know* what the property will bring at twelve months. That species of property is at present much depreciated. *It ought*, however, to bring the amount of the judgment and costs, and it would be a great sacrifice to sell it lower." Again, on the 9th of December, the day after the first exposure, he wrote to the plaintiff, informing him that no sale had been effected, and that the land was to be offered again on the 26th of the same month. In that letter he says, "Please address me an authority to bid to the amount

EASTERN DIST.
*February*, 1837.

RELF,
SYNDIC, &c.
*vs.*
IVES.

of judgment and costs, or to such amount as you shall see proper. Mr. Saul will no doubt arrive in time to concur with you in the act. It may be by simple letter. Please address me at Donaldsonville, by mail. The sale is to be made on the land. *I hope* to be able to sell it for amount of debt and costs." On the 20th, the plaintiff wrote to Mr. Ives, acknowledging the receipt of his letter of the 7th, which he had communicated to Mr. Saul, at whose suggestion they had consulted their counsel, Mr. Eustis, who thought it doubtful whether they, (the syndics) in case of their purchasing in the land, and any loss should be experienced in a subsequent sale by them, would not make themselves responsible, personally. "Under this advice," he continued, "we have concluded to let the sale take place, *without any interference on our part,* to which determination we have come, more readily, from the *hope* you lead us to entertain, that the property will sell for the amount of the debt and costs."

At the date of this letter, the plaintiff was informed that the sale was to take place on the land, and not in town, of which he now complains; that property of that kind was greatly depreciated in value, and that it was doubtful how much it would bring, though the defendant hoped it might be sold for enough to satisfy the judgment, a hope evidently coupled with a confident expectation that he would still be authorized to appear as a bidder at the sale for the syndics; and yet, all authority, all control over the sale, all discretion, was revoked, and the determination of the syndics distinctly announced that the sale should take place without any interference on their part. In coming to this resolution, they had been influenced, not by the suggestions of the defendant, but, contrary to his reiterated solicitations, by the advice of other counsel, and from an apprehension that they might make themselves ultimately responsible to the creditors. It appears to us, as it did to the court below, that after receiving this letter the defendant was released from all professional responsibility to the plaintiff, and that he could not have interfered without incurring personal liability. All authority whatever was expressly withdrawn. Throughout

*Where the principal instructs his agent and attorney at law, intrusted with the enforcement of an execution against certain property, to let the sale take place without any interference on his (principal's) part, and the attorney bids it in on his own account for a sum less than the debt, he is not liable for any loss sustained by the principal, or for a violation of his trust.*

65

EASTERN DIST.
February, 1837.

the whole business the defendant appearsto us, to have acted with strict regard to his professional duties, and with even an anxious solicitude for the interests of the plaintiff. It could not fairly be expected that the defendant should incur any personal liability, by assuming to act for the syndics contrary to their instructions, when the syndics had given those very instructions, in order to avoid such responsibility themselves.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.