(102 So. 817)

No. 24213.

## HUMPHREYS v. BUTLER et al.

(Jan. 5, 1925.)

*(Syllabus by Editorial Staff.)*

**1. Brokers ⚖️36—Brokers procuring sale of principal's property to company organized by them, by mortgagee purchasing it on foreclosure, held not liable to principal for breach of trust or fiduciary relation.**

Brokers advancing sums for supplies to principal, who remained in possession and retained management of plantation, title to which was placed in brokers' names merely to facilitate sale, *held* not trustees, and not liable to principal, though one of them acted as his attorney, for property itself or difference between estimated value thereof and mortgage indebtedness at date of foreclosure and sale to mortgagee, from which company organized by brokers, solely as legitimate business enterprise, purchased it where principal, with knowledge of facts, acquiesced in sale thereto for nearly four years before bringing suit.

**2. Liens ⚖️5 — Privilege; cannot be created by mere convention of parties.**

Liens cannot be created by mere convention of parties, but arise from operation of law.

**3. Vendor and purchaser ⚖️13—Sales; mortgagee's surrender of collateral stock and mortgage held valid consideration for sale of mortgaged property by corporation to mortgagee to enable it to retain vendor's lien by resale to another company.**

Mortgagee's surrender of corporate stock, held by it as collateral, and special mortgage of more than $2,000 on 5.15-acre tract owned by corporation, to brokers, in whom title to mortgaged property was placed to facilitate sale under order from mortgagor, who owned all stock of corporation, *held* valid consideration for latter's sale of tract to mortgagee, to enable latter, by resale to company organized by brokers, to retain vendor's lien in lieu of securities surrendered.

Appeal from Twentieth Judicial District Court, Parish of Terrebonne; William E. Howell, Judge.

Suit by Joseph A. Humphreys against Robert B. Butler and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Merrick & Schwarz, of New Orleans, and Allen J. Ellender, of Houma, for appellant.

Caillouet & Caillouet, of Thibodaux, for appellees.

LAND, J. On April 22, 1912, plaintiff placed title to the Magnolia plantation in the names of the defendants, Robert B. Butler, Charles P. Gable, and John D. Schaffer, for the purpose of effecting a sale of said property. The plantation included a tract of 5.15 acres belonging to the Magnolia Manufacturing Company, whose stock was owned by plaintiff.

At that date, this property, with the exception of said tract, was incumbered with a special mortgage in a large amount in favor of the People's Bank & Trust Company of Houma, La., securing the payment of certain promissory notes held by said Bank & Trust Company.

On April 22, 1912, defendants entered into the following written agreement with plaintiff, as to the sale of said plantation:

"Whenever we shall have sold or disposed of said entire properties for a sufficient amount to pay all the present indebtedness thereon, and such further indebtedness as may from time to time be attached thereto, including taxes and all incidental expenses that may be in connection therewith; then, in that event, we agree to pay the said Humphreys all surplus, over and above the amount necessary to discharge the above item of indebtedness, taxes, expenses, etc., including interest at the rate of 8 per cent. per annum, up to and including a total valuation of $40,000 for said property.

"Any amount that said property may bring in excess of $40,000 shall be apportioned in the proportion of one-half to us and one-half to said Humphreys."

On May 17, 1913, the People's Bank & Trust Company foreclosed its mortgage and bought in the property at the sale for the price of $13,400.

In pursuance of an agreement entered into between defendants and said Bank & Trust Company, prior to the foreclosure, the Bank sold this property later on to the

"Bayou Black Stock Farm, Limited," organized by defendants, Shaffer excepted, and several associates, for the sum of $24,597.41; the sum of $4,597.41 being paid in cash, and the balance of the purchase price being represented by five notes, payable on May 19th of the respective years, 1914, 1915, 1916, 1917, and 1918, and secured by vendor's lien. The following mortgages existing on this property at the date of its purchase by the Stock Farm Company, including privileged debts claimed by third oppositions, were paid by said company after the purchase of this property:

| | |
|---|---:|
| People's Bank | $   314 14 |
| J. C. Dupont ($150 and 10 per cent. interest) | 165 00 |
| A. M. & J. C. Dupont | 306 83 |
| Geo. W. Hatch | 173 35 |
| Dibert-Stark & Brown | 54 05 |
| Total mortgages and privileges | $1,013 37 |

The following additional indebtedness was also paid by the Stock Farm Company:

| | |
|---|---:|
| Butler and Gable (advances for plaintiff) | $2,981 65 |
| Costs (as per procès verbal) | 443 67 |
| Operating expenses (as per procès verbal) | 1,372 65 |
| Interest note signed by Butler and Gable | 1,808 25 |
| | $6,606 22 |

Recapitulation.

| | |
|---|---:|
| Total cost of property to Stock Farm Company: | |
| Purchase price paid to Bank & Trust Company | $24,597 41 |
| Mortgages paid on property after purchase | 1,013 37 |
| Additional indebtedness paid after purchase | 6,606 22 |
| Total cost of property to Stock Farm Company | $32,217 00 |

The basis of the present suit is the charge by plaintiff that defendants acted fraudulently and in violation of their fiduciary relations to him, by inducing the People's Bank & Trust Company to foreclose its mortgage, and in acquiring this property through the organization of the Bayou Black Stock Farm, Limited, and that the purpose of defendants in so doing was to avoid their obligations to plaintiff under the contract to sell said plantation, and thereby divest him of his right, title, and interest in same.

For the alleged breach of said contract, and for the alleged violation of trust relations by defendants, plaintiff seeks to have the sale from the Bank & Trust Company to the Bayou Black Stock Farm Company rescinded and set aside, and to be decreed the owner of the property conveyed, subject to such debts or mortgages as were properly due to said Bank & Trust Company at the time of the foreclosure. Should the court deny the relief prayed for, plaintiff prays, in the alternative, for judgment against the defendants in solido in the sum of $15,000, the alleged difference between the mortgage indebtedness due on said property at the date of foreclosure, and the estimated value by plaintiff of the property sold, to wit, $40,000.

[1] The allegations of plaintiff as to any actual fraud committed by defendants in the purchase of this property by the Stock Farm Company are not sustained by the evidence.

That defendants did not induce the Bank & Trust Company to foreclose the mortgage, after said company had agreed to an extension of one year, as alleged by plaintiff, is clearly established by the testimony of Butler, and of Montague, cashier of said Bank & Trust Company, who represented the same in the transfer of this property to the Stock Farm Company. On the contrary, it appears from the evidence that Butler in good faith sought to prevent the seizure and sale of this property, and, having failed to obtain a stay of the impending foreclosure proceedings, approached the Bank & Trust Company for the first time, to arrange for the purchase of the property from it by the Stock Farm Company, in order to protect defendants against loss from the obligations which they had incurred on behalf of plaintiff, who was in straitened circumstances, and powerless to avert the foreclosure of the mortgage against his property, by the payment of the debts due the Bank & Trust Company, or to obtain from said Company any further indulgence as to extensions.

Defendants had assumed no obligation, under their written agreement with plaintiff, to pay off the mortgage indebtedness on the property, and thereby prevent the foreclosure and sale. The record is barren of evidence to show that there was any collusion between the defendants and the People's Bank & Trust Company to stifle competition in the bidding on this property. Defendants did not bid at all at the foreclosure sale. The property was appraised at $20,000 by appraisers appointed for plaintiff and the Bank & Trust Company, and was sold for the price of $13,400, or two-thirds of its appraised value, even under executory process.

The charge by plaintiff that, at a time when he could have sold the property at $40,-000, he was induced by Butler to refuse to make the sale, and to place the property into his hands and those of his associates for sale, is not proven by the evidence in the case. At no time did plaintiff receive an offer of $40,000 for this property. The highest estimate placed upon this property before the foreclosure as disclosed by the record, is that of $26,675 made by the special committee of the Bank of Terrebonne for the purpose of determining whether the Bank should take up the first mortgage of the People's Bank & Trust Company for its own protection. When it is considered, therefore, that this property was purchased from said company, the adjudicatee at the sale, for $13,400, and was conveyed to the Stock Farm Company at a total cost of $32,217, a price of $5,542 in excess of the estimate placed upon the property by the Bank of Terrebonne. it cannot be said from the record in this case that defendants, as agents for the sale of this property, violated their good faith with plaintiff by speculating upon the property of their principal.

Nor does the evidence before us establish the fact that defendants occupied any fiduciary relations to plaintiff as trustees. The title to this property was placed in the names of defendants merely to facilitate its sale. Defendants advanced various sums to plaintiff, who remained in the possession of the property and retained the management of the same, as supplies necessary to cultivate and raise the crops on the place. These sums were placed to the credit of plaintiff in bank and subject to his individual checks.

Under the state of facts disclosed by the record, even should we conclude that Butler acted as the attorney for plaintiff, we do not find that he has incurred any liability to plaintiff because of such relationship.

In Hyams v. Herndon, 36 La. Ann. 879, this court said:

"It was long since settled in this state that the mere relation of attorney and client does not, of itself, disable the attorney of a judgment creditor from buying for his own account at a sale in execution, provided he act in perfect fairness and good faith, and in no manner in opposition to the interest of his client. Relf v. Ives, 10 La. 509."

The testimony of E. P. Gable, R. B. Butler, C. C. Crisal, and John M. Foote, stockholders in the Bayou Black Stock Farm Company, clearly establishes the fact that this company was organized solely as a legitimate business enterprise, and without any ulterior motive to avoid any obligations to plaintiff. The stock was paid for at its face value.

These witnesses also testify that plaintiff was acquainted with the intention of said company to acquire the Magnolia plantation, that plaintiff was called upon to subscribe to the stock of the company, but declined because of financial difficulties, and that plaintiff was well aware of the purchase by said company of this property from the People's Bank & Trust Company.

Plaintiff surrendered the possession of the place to the new manager appointed by the Stock Farm Company, and the only claim that plaintiff urged against said company at the time was that the sale of the property by

the People's Bank & Trust Company under its mortgage had not divested him of the ownership of certain live stock. This claim was recognized and settled by the Stock Farm Company.

The foreclosure sale under the mortgage of the People's Bank & Trust Company was made May 17, 1913. Later on plaintiff filed a petition in bankruptcy in the federal District Court for the Eastern District of Louisiana, and recited in his schedule that he had no assets. At a creditors' meeting held October 17, 1914, plaintiff stated under oath that he had no interest or equity in the Magnolia plantation.

On April 11, 1917, nearly four years after the foreclosure, and after the acquisition of this property by the Stock Farm Company, plaintiff filed the present suit.

It is obvious that plaintiff knew, as well in the year 1913, as in the year 1917, that Gable, Butler, and Schaffer were his agents for the sale of the Magnolia plantation, and that Butler was his attorney.

His acquiescence in this sale, for nearly four years, although he was acquainted with these facts, is a complete denial of the validity or seriousness of the claim by plaintiff in the present suit that his action is based, in fact, upon any mere breach of trust or fiduciary relations by defendants.

The whole suit of plaintiff is predicated patently upon the charge of actual fraud and collusion upon the part of defendants, said charge being unsupported by the actual facts of the case.

[2, 3] The 5.15 acres, with molasses house located thereon, and owned by the Magnolia Manufacturing Company, was sold by said company to the People's Bank & Trust Company on the same day that the Magnolia plantation was purchased by the Stock Farm Company from said Bank & Trust Company, in order to convey this plantation as a unit to said Stock Farm Company. This small tract formed a part of the Magnolia plantation, and was incumbered by a mortgage of more than $2,000, held by the Bank & Trust Company, the title to this property being in the Magnolia Manufacturing Company and not in plaintiff.

Plaintiff attacks the sale made by the Magnolia Manufacturing Company to said Bank & Trust Company as being without consideration, and alleges that Gable, acting as president, and Butler as secretary of said company, in making said sale, were without right or authority to execute the deed, as neither owned a single share of the stock of said company.

Plaintiff alleges that all of the stock of the Magnolia Manufacturing Company belonged to him, and was pledged by him to the People's Bank and Trust Company as additional collateral to the mortgage held by said Bank & Trust Company.

In a letter of date June 6, 1913, from Butler to plaintiff, the latter is advised that the People's Bank & Trust Company had purchased the Magnolia Plantation for $13,400, and that "Mr. Montague (cashier of said Bank & Trust Company), is getting a little impatient for a final adjustment of the matter, but I had hoped you would be able to return soon, *as he desires to arrange a vendor's lien on the entire property, and that could be accomplished more conveniently if you were here to turn over the stock of the Magnolia Mfg. Company*, than in your absence." (Italics ours).

In response to this letter, plaintiff sent an order of date June 20, 1913, to the People's Bank & Trust Company, the holder of all of the capital stock of the Magnolia Manufacturing Company, as collateral pledged to it by plaintiff, directing said Bank & Trust Company *to deliver to Butler said certificates of stock* and a mortgage note of some $2,000 on the property of the Magnolia Manufacturing Company, as well as any and all col-

laterals pledged by plaintiff to said Bank & Trust Company, in connection with the mortgages on said plantation.

This was done by plaintiff, in response to the letter of Butler advising him that the cashier of the People's Bank & Trust Company "desires to arrange a vendor's lien *on the entire property*," which necessarily included a vendor's lien on the 5.15-acre tract owned by the Magnolia Manufacturing Company, and forming a part of the Magnolia plantation. This stock was used by Butler, under this express authorization, in the only way and for the only purpose for which it could be so used, in taking corporate action for accomplishing a sale from the Magnolia Manufacturing Company to the People's Bank & Trust Company, and for a resale from said Bank & Trust Company to the Stock Farm Company, in order to create a vendor's lien in favor of the former company. As liens cannot be created by the mere convention of the parties, but arise from operation of law, the vendor's lien contemplated in this case could be effected in no other way. The People's Bank & Trust Company had acquired title to all the Magnolia plantation at the foreclosure sale, except the 5.15 acres owned by the Magnolia Manufacturing Company, and which was not covered by the special mortgage held and foreclosed by the Bank & Trust Company. This capital stock was, therefore, used by Butler, in the election of officers of the Magnolia Manufacturing Company, in the adoption of the necessary resolution for the sale by the board of directors, and in the conveying of this tract of land to the Bank & Trust Company. Gable was elected president and Butler secretary under the stock delivered by plaintiff, the stock being indorsed in blank when pledged by plaintiff to the Bank & Trust Company. The resolution authorizing this sale was unanimously adopted by the board of directors of the Magnolia Manufacturing

157 La.—21

Company, and C. P. Gable, president of said company, was designated as its duly authorized agent to make said sale.

The price of this 5.15 acres was included in the purchase price paid by the Stock Farm Company to the People's Bank & Trust Company for the entire Magnolia plantation, and plaintiff therefore received a credit for same on the indebtedness due by him. The surrender by the Bank & Trust Company to Butler, under plaintiff's order, of all of the stock held by it as collateral, and of the special mortgage of more than $2,000 on the 5.15-acre tract owned by the Magnolia Manufacturing Company, was, necessarily, a valid consideration for the sale by said company to said Bank & Trust Company of said property, in order that it might, by a resale of the same to the Stock Farm Company, retain a vendor's lien, in lieu of the collateral and mortgage surrendered. If this is not true, then what consideration did the Bank & Trust Company receive from plaintiff for the surrender of its securities for its debt, if Butler and Gable were without authority to sell this property to the Bank?

It is therefore idle, under these circumstances, for plaintiff to contend that there was no consideration for the sale from the Magnolia Manufacturing Company to the Bank & Trust Company, and that Butler and Gable were without right or authority to make said sale, in the face of the express authority granted by plaintiff in response to Butler's letter, and evidenced by the order for the delivery of the stock to Butler, for the specific purpose of arranging for the granting of the vendor's lien to the Bank & Trust Company.

The judgment of the lower court rejected plaintiff's demand at his costs, and, in our opinion, said judgment is correct.

Judgment affirmed.

O'NIELL, C. J., concurs in the result.